Good morning, Your Honors. May it please the Court, Breonna Fuller on behalf of Reggie Winston. I'm intending to reserve three minutes of my time for rebuttal. Your Honors, in this case, the government advances a rule under which a halfway house's decision to terminate one of its residents would be binding on the district court as to whether a supervisee had violated the terms and conditions of his probation. This cannot be the rule because the process of the halfway house does not guarantee... Well, if let me just jump ahead for a minute. Sure. Let's assume that the conviction, let's call it, on the other finding regarding the halfway house is invalidated and the marijuana violation is upheld. Isn't it fairly clear that the sentence would have been the same? Your Honor, the government advances two species of this argument. I think you're referring to the second one, which is would the sentence ultimately have been the same. I think what's clear is that the, certainly the range, the advisory range that would apply would be the same. And yes, the court did focus its comments right before it sentenced on the marijuana issue. But it's not clear. I mean, the judge had other inputs, certainly. And in particular, the government argued that this was not simply a marijuana violation and that the court should resist any attempt by defense counsel to make this solely a marijuana violation. In addition, you know, it appears that the recommendation was driven in large part by the threat to the halfway house employee. When you say the recommendation, you mean from the probation office? The probation's initial recommendation was based solely on the probation, on the halfway house violation. When the marijuana violation was added, there was no additional sanction that the court or that the probation officer recommended. So presumably the period of incarceration has been served. That's true, Your Honor. And we're talking about a supervised release period? Yes, Your Honor. If we went back, the only remedy that we could seek would be a shorter supervised release period. So it's not that you're seeking a ruling to go back and undo the determination of that there was a probation revocation. You're just talking about the sentence. I think because this was not a situation of mandatory revocation, we could have asked for, in lieu of a revocation, that the court either – that the court continue, Mr. Winston, on the probation. No, you didn't. You're not. What we've said is that – I mean, I think that if we went back, that is what we would be asking for. That – What should we be asking for? What is this case about? Is it challenging the revocation or challenging the sentence on revocation? We would go back and ask for an evidentiary hearing, and if we lost that evidentiary hearing, obviously we wouldn't have – the case would be over. If we won that, then we would be asking for the court to simply enlarge the conditions of probation or to continue Mr. Winston on probation, or, in lieu of that, to reduce the amount of time he has to serve on his supervised release. So you are challenging the revocation and not just the sentence. Yes. Right. That's correct. I think – I mean, to go back to the harmlessness part, which seems to be the Court's focus, at least right now, you know, as this Court has often said, sentences are packages, and it's not clear how one piece of information, particularly when it was the piece of information that the government pressed over and over again, you know, that this man was a danger to society and that his assaults – or that the threat was simply another in a long line of violent conduct, you know, that the probation officer asked for anger management class – Had the district judge said – or whoever revoked it – said that I was surprised at what a light sentence it is, I would have given more. That's true, Your Honor, but in the end, he did go along with the – with the recommendation, and it's not clear what the probation officer's recommendation would have been if there wasn't this threat on the scene. The probation officer's recommendation came from the threat from the halfway house. It didn't change when the marijuana violation was added. So it's not clear – I don't think it's clear what the probation officer would have recommended, and I'm not sure it's clear what the Court would have done with that information, again, in particular because the government was pressing the Court to see this as more than simply a marijuana violation. So – so you're saying that he – that we really shouldn't put any weight or any significant weight on the fact that the judge didn't say anything about the halfway house thing when he made his comments in opposing the sentence? I think, obviously, that's – obviously, that's some indication of what he was thinking at the time. I think that it doesn't mean that that was the only thing he was considering, and I think in Cardi it says that if the Court relies on facts that are untrue, that's procedural error. And so if the Court was – was relying on something, even if it's not necessarily what he said at the time of sentencing, I think it's – it's impossible to tell what impact that had. But wasn't the district court also a little confused? Because didn't he say that at one point that he was terminated from the halfway house because of the marijuana? I think he did say that, and it's not clear whether that was just a misstatement, a slip of the tongue, or whether he was genuinely confused about what the two – But therefore, I mean, one explanation is that he thought the two were one, essentially. That's – that's one explanation. It's – it's hard for me to tell whether that was just a – you know, whether he just misspoke or not. I'm happy to go into the threats issue more, but it seems like the Court's issue is harmlessness. So if the Court doesn't have other questions, I will reserve the rest of my time. Good morning, Your Honors. May it please the Court, Mack Jenkins on behalf of the United States. And following up on the Court's questions to Ms. Fuller, I will also focus on the harmless error aspect, and just to correct or to give the government's view of what happened in terms of the argument that was made by me at the lower court. Well, I said, I believe, this is not just about marijuana. I went on from there to explain what the government's view of the case was, which coincided with what the Court's comments were. And just to back up one step, that is because this defendant had a lot of baggage coming into the courtroom that day for – with the government and with the judge specifically. And it's fair to say that that baggage had, to a large degree, exhausted the Court's patience, sympathy, and the defendant's own credibility in that courtroom. And by that, I mean he was on multiple violations, both for drug use, while on pre-trial release in this case. That's very odd. The judge seemed to believe it's quite possible that he needed the medical marijuana for his health. He said, has anyone gone to Washington and asked for medical card approval? So he seemed to be bothered by the fact that he hadn't gotten a medical card. I don't know how you get a medical card in Washington. That's the last place you could get it. You can get a medical card in California. But the judge suggested that would be something for him to do. So he just seemed to recognize the possibility that the use of marijuana was because of medical reasons. And I think that may very well be true. And that also goes to my point, while I argue it's not a marijuana violation, it's because it's this defendant's attitude and conduct and behavior while on supervisory release or pre-trial release. Because he had made the health claims on numerous previous occasions, but he did nothing about them. The court specifically said, if you have this problem, go to a doctor. Provide me a doctor's note. Come in here and talk to me about it and show me the doctor's note. He said that on repeated occasions. Instead, and I believe it's in the court's sentencing comments, you just ignored my request. You just kept on smoking marijuana despite that I asked you to present to me some evidence. But the district court did say that he was fighting revocation on both grounds. Correct. And did bother to go through the whole hearing. Correct. So how can we surmise anything about the notion that he would have done the same thing even though he found both grounds? And even though it was being argued to him that the threat was a serious matter? Two points to that question, Your Honor. First, I think, again, from the court's own comments, as I did argue a lot about the marijuana, but the court focused his comments during the sentencing at this defendant's behavior while on release. He specifically noted that the court gave the defendant a very big break at his initial sentencing. His low end range was approximately 15 months, the court noted. He gave him probation. During his pretrial release when he revoked numerous times, he gave him opportunities, didn't immediately send him to jail. The court focused a lot on his disappointment that the defendant, in his view, has turned his back on the court's gratitude or chances that he was providing to them. The second point, Your Honor, is all of that information regarding the defendant being terminated from the halfway house was going to come in anyway. The court could still consider that even if they did not find the violation. And that's both under Cardi and Petty in this court's case law, that as long as there is a minimal indicia of reliability, the evidence of even unfound violations come in. And that's especially true here where, to a large degree, there was actually, despite the party's diametrically opposed views, there was actually very little in dispute about what happened. The defendant doesn't claim that the victim employee fabricated the confrontation. The defendant doesn't claim it wasn't him involved in the altercation. He doesn't even claim that it was a plight or he didn't say anything wrong. In fact, he defended his own words. He claims he didn't threaten him, and that's the question. In the government's view, that's what he calls a threat, is semantics, that the context of the environment, there's this altercation. But he doesn't even say that he said those words. The implication is he didn't say those exact words. He said harsh things, but not necessarily those exact words. His quote also is, I didn't really say those words. So whether he did or not. I didn't say those words. That's after he's already been found. That's after the violation's already been found, right? So he's trying to mitigate it. How can you rely on what he says after the violation's been found to prove that, you know, it would have been proven in the absence of, you know, this hearsay? Certainly, because he first, he provided statements, a statement to the halfway house prior to his violation. So he provided a statement that was presented. Secondly, defense counsel, on his behalf. And what was the statement? Was the statement, I said those words, but I didn't mean them, or what was the statement? It was, the statement was, I said harsh words. I believe it was, forgive my language, don't tear up my fucking pictures. And that was, but I didn't threaten him. Okay. So he did have, he did say that he didn't say threatening words. He certainly disputes that he didn't say threatening words. The problem, I think, is what he intends or what he thinks is a threat isn't controlling, especially in this history of this defendant who has a history of violence. I think the context must also be considered that he's in a residential reentry center where there's multiple other felons or criminals. Yeah, but the first question is what did he say? If he said what he said, he said, would that be a threat? If he said, don't tear my fucking pictures, I think it could be a threat, and I think the victim thought it was a threat. Even if you use his own words, don't tear my fucking pictures, when it's the defendant's, excuse me, it's the victim employee's job to be going through to search for contraband, that's certainly a confrontational quote just on its own. But I think it can't be taken in a vacuum is what defendants' arguments seem to do. It certainly must be considered that this is a defendant. The reports are that he's around 5'9", 220 pounds. He has a history of violence and drug abuse. He's in a residential reentry center. The victim is a 20-year-old, presumably a young man. He works at a residential reentry center, which I think is relevant because it wasn't just some random individual on the street who may be unfamiliar with convicts or overreact or hypersensitive. It's this victim's job to deal every day with people like that, and it's his job to search with them, to say that he's over-exaggerating. A, I think misses the point of ultimately this defendant was terminated for a reasonable reason. His view that he wasn't as threatening as should be viewed or that he considered what he said not as threatening. The probation officer testified, no level of threat can be tolerated. And I think that's an important point because in a residential reentry center, you simply have to defer strongly to the residential reentry center's determinations and regulations because they have a hard job using 20-year-old outweighed, outnumbered staff members to control this population. Can I go back to the harmless era for a moment? Certainly. When you say that the court only discussed the marijuana, I mean, all you're talking about, as I understand it, is one paragraph on pages 19 and 20 as a transcript. Is that right? Well, two paragraphs, I guess. Yes, Your Honor. That's it. That just happens to be what he was talking about just before he imposed the sentence. But that's because the defendant, at that point, in giving his whole allocution, had talked about the threat and then had talked about the medical marijuana, and the court was responding to what he said about medical marijuana, and that was about it. I mean, I don't know how we get from there to the fact that the district judge, after he said, I'm finding both violations, ignores one of them. I think in part it's because of what the defense attorney had just previously stated. But, however, I think it is important that while I focused on kind of the broader consequences of this defendant's conduct and history of violations and the fact of this latest one being the threat or the perceived threat of violence, that the court did focus on the marijuana violation, notwithstanding the government's focus on the broader view of how this defendant should be viewed, including his threat. And, again, in any event, the government's view is that information is coming in, whether it's a violation or not. That defendant got into an altercation. That defendant said, even using his words, some harsh or wrong words. The victim felt threatened. That multiple witnesses provided statements that corroborated that threat. That defendant was allowed an opportunity to give a statement. That notwithstanding that statement, the RRC terminated him. Just that is undisputed, unequivocally. All that information would come in, and I do think would be relevant to the judge, given this defendant's history of noncompliance, of violence, and of drug use. Unless the court has any specific questions. I see I have 20 seconds remaining, so I'll submit on that. Thank you, Your Honors. Thank you. I just have a couple quick comments. One, I think you can't say that the information wouldn't have come in anyway. I think that if the court had found, had held an evidentiary hearing and found that the violation had not been proved, it would be improper under Cardi for the court to nonetheless have considered an unproved violation that he found wasn't true. So I don't think you can say that it would have come in anyways. It might have come in if the government had dropped the violation. Perhaps the court could still consider it. And certainly, you know, I think while the court was most perturbed or most annoyed by the fact that the defendant had continued to use medical marijuana without specifically coming and asking the court whether he could use medical marijuana. He said, I get to decide that, not you. Are you bringing any evidence that this was medical marijuana? He did have his medical marijuana card, and he did. And I think the defense attorney tried to pass it to the judge, and the judge said, give it to the government counsel. And that is on page 17 of the excerpts. I think what the court was annoyed was that he hadn't done that before he began using the medical marijuana. He had just continued using marijuana without coming back to the court and saying, I have this medical issue. This is what my doctors have said. This is my medical marijuana card. Can you modify the condition? Certainly, I think the court was annoyed that he had not taken that proactive step, but instead had just continued to use. But when you think about the facts that the court needs to consider in determining sentence, dangerousness to the community, the need to deter the defendant, I think that the concern in those factors, you can't eliminate the fact that he had allegedly threatened this halfway house employee because of this direction. The judge said in sentencing is what he's going to do is sentence him to what the probation office recommended. If you get the community service done, I'll probably terminate your supervision when you get out. Did that happen? My understanding is he has not finished his community service. It did not happen, no. Unless the court has other questions, I'm prepared to submit. Thank you. Thank you. The case is argued and submitted.
judges: Kennelly, Reinhardt, Berzon